# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA MARIE RIVOTA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[1] Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:18-cv-01342-BAM <br><br> **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Tina Marie Rivota ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

On July 7, 2014, Plaintiff filed an application for disability insurance benefits and an application for social security income. AR 245-46, 247-54.[3] Plaintiff alleged that she became disabled on December 31, 2011, due to rheumatoid arthritis. AR 273. Plaintiff's applications were denied initially and on reconsideration. AR 125-28, 130-34, 139-43. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ James Delphey held a hearing on July 28, 2017, and issued an order denying benefits on September 21, 2017. AR 58-80, 38-52. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 7-11. This appeal followed.

### **Hearing Testimony**

The ALJ held a video hearing on July 28, 2017, in Los Angeles West, California. Plaintiff appeared with her attorney, Robert Davis, in Palmdale, California. Impartial Vocational Expert ("VE") Carmen Roman also appeared. AR 41, 60.

In response to questioning by the ALJ, Plaintiff testified that she last worked as a babysitter in 2010 or 2011. She also worked as a nurse's assistant in 1995-1996, but she was laid off and never renewed her certification. AR 61-62.

Plaintiff has two children ages 14 and 16, one of whom is disabled. She has never applied to the state to be paid as a caregiver for her son. She does not do anything physical for her son and he is able to take care of himself. She works with his teachers and makes sure he keeps his schedule. He is in special education. AR 62-64.

Plaintiff testified that she was first diagnosed with rheumatoid arthritis six years before the hearing. She stopped taking methotrexate three weeks before the hearing because of hair loss. AR 64-

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

65. She currently takes prednisone. She has a cane, but it was not prescribed. She is not able to use a cane well because her thumbs and hands swell up. She uses it when she goes to her doctor's appointments. Trips to her doctors' appointments take three hours and she cannot stop for rest during the trips. AR 65-66, 67-68. The rheumatoid arthritis affects her joints, and she gets swelling in her knees and feet. She also gets "charley horses" in her neck, back, underneath her rib cage and her feet. She has to move slowly and carefully. If she moves too fast, her muscles cramp and seize up. AR 67. Her medications for pain and rheumatoid arthritis help to a point. She still suffers pain, but she would be worse without them. AR 69-70.

Plaintiff further testified that she has anxiety. Her anxiety and depression are partly due to her physical condition. She takes medication to help the anxiety and to help her sleep. AR 66-67.

In response to questions from her attorney, Plaintiff reported that she can walk 15-20 minutes and stand 15-20 minutes. She can sit in a chair for about 25 minutes before she begins shifting and moving around. She can lift and carry about 10 pounds. She cannot climb stairs, bend over or stoop. AR 70-72. She does not go to the grocery store. She can dress and bathe herself. She does not drive. AR 72-73. When her kids are at school, she is basically watching TV and waiting for them to come home. AR 74. She has side effects from her medications. She experiences dizziness and chills. She also experiences nausea when she travels or is in the sun. AR 72.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Carmen Roman. The VE reported that Plaintiff's past work as a babysitter is medium work. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's same age, education and work background who was capable of light exertional work, but push/pull with the arms or legs would be limited to no more than frequently, climbing ramps and stairs occasionally, no ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, crawling occasionally, and reaching, handling, fingering and feeling frequently with both upper extremities. This person must avoid exposure to extreme cold and no more than occasional exposure to humidity or wetness and working at heights or around moving hazardous machinery. The VE testified that this would eliminate Plaintiff's past work as a babysitter, but there would be other work available, such as

information clerk, counter clerk and furniture rental clerk. If the person were limited to no more than two hours of being on the feet, those jobs would not be available in the light category. AR 75-76.

For the second hypothetical, the ALJ asked the VE to assume a person who could only stand/walk two hours in an eight-hour workday, work at sedentary. However, this person could push/pull with the arms or legs no more than frequently, could climb ramps and stairs occasionally, but no ladders, ropes or scaffolds, could balance, stoop, kneel, crouch and crawl occasionally, and could reach, handle, finger and feel frequently with both upper extremities. This person also must avoid exposure to extreme cold, humidity or wetness and working at heights or around moving hazardous machinery. The VE testified that available work would include information clerk, document preparer, and addresser clerk. If this person could only rarely climb stairs, these jobs still would not be eliminated. AR 77-78.

For the third hypothetical, the ALJ asked the VE to assume a person suffering from rheumatoid arthritis with side effects from medications who would not be able to maintain attendance on a regular basis and would miss all or part of a day three times per month. The VE testified that this would lead to termination and would be inconsistent with maintaining any competitive employment. AR 78-79.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 41-52. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 2012, her alleged onset date. The ALJ identified rheumatoid arthritis and obesity as severe impairments. AR 43-46. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 47. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could do no more than frequently push or pull with her upper and lower extremities, rarely climb ramps or stairs with no climbing long flights of stairs, must avoid climbing ladders, ropes, or scaffolds,

could occasionally balance, stoop, kneel, crouch, and crawl, could no more than frequently reach, handle, finger or feel bilaterally, and must avoid exposure to extreme cold, wetness, excessive humidity, working at heights or hazardous machinery. AR 47-50. Plaintiff did not have any past relevant work, but with this RFC, the ALJ found that Plaintiff could perform work that exists in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 51-52.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# **DISCUSSION**[4]

Plaintiff contends that the ALJ erred by (1) improperly rejecting the opinion of the consultative examiner, Dr. Leslie Roman; (2) improperly relying on the VE's testimony at step-five of the sequential evaluation; and (3) improperly rejecting Plaintiff's testimony.

### **A. The ALJ Did Not Err in Evaluating the Opinion of Dr. Leslie Roman**

Plaintiff first argues that the ALJ erred in evaluating the opinion of consultative psychological examiner, Leslie Roman, Ph.D.

On September 12, 2016, Dr. Roman completed a consultative psychological evaluation. Plaintiff complained of anxiety, sleeplessness, difficulty concentrating and trouble with her memory. AR 579-80. As to her daily activities, Plaintiff reported that she was able to dress and bathe herself, cook, feed her family and pet, make lunches, help her kids with homework when it is not too difficult, pay bills, and handle cash appropriately. Her hobbies included reading and watching TV, and she gets along "good" with family, relatives, friends, neighbors and others with whom she comes into daily contact. AR 581.

On mental status examination, Plaintiff's motor activity and speech were normal. She was cooperative with no behavior disturbance. Her mood and affect were anxious. Her associations were goal-directed, and she had no delusions. AR 581-82. Dr. Roman diagnosed Plaintiff with anxiety disorder, NOS. Dr. Roman opined that Plaintiff was capable of managing funds. Dr. Roman also opined that Plaintiff's ability to understand and remember very short and simple instructions and her ability to understand and remember detailed instructions were intact. She was mildly limited in her ability to carry out very short and simple instructions and mildly to moderately limited in her ability to carry out detailed instructions. AR 583. Her ability to complete a normal workday and work week

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited. Her ability to interact appropriately with the general public was moderately limited. Her ability to ask simple questions and request assistance was intact. Her ability to accept instructions and respond appropriately to criticism from supervisors was mildly to moderately limited and the ability to be aware of normal hazards and take appropriate precautions was limited. AR 584.

The ALJ assigned "some weight" to Dr. Roman's opinion at step two of the sequential evaluation, but nevertheless determined that Plaintiff's anxiety disorder did not cause significant limitation in her ability to perform basic mental work activities and was not severe. AR 44. In evaluating Dr. Roman's opinion, the ALJ reasoned as follows:

> Dr. Roman's opinion, based on a single encounter, is given only some weight because it is inconsistent with the overall medical evidence. The claimant has sought little treatment for a mental impairment. She does not participate in counseling. She was cooperative with the consultative examiners and her demeanor during the hearing was appropriate. By her own admission, she retains the ability to perform a wide variety of daily activities, including caring for her disabled son and work around her home (Ex. 7F/9; Testimony). While the claimant experiences some anxiety, it is significant that she did not note any mental health impairment when she initially filed her claim (Ex 2E/2), and the State Agency medical consultants did not make any finding of a severe or nonsevere mental impairment based on their review of the longitudinal record (Ex. 1A, 2A, 5A and 6A).

AR 45.

Plaintiff asserts that the ALJ did not provide sufficient reasons for discounting Dr. Roman's opinion. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the

Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

In this instance, the parties dispute whether Dr. Roman's opinion was contradicted by any other physician. Plaintiff believes it was uncontradicted because the record contains no conflicting medical opinion, particularly from a state agency physician. (Doc. No. 15 at 10) The Commissioner counters that Dr. Roman's opinion is contradicted because no state agency physician determined that Plaintiff had a severe mental impairment. (Doc. No. 16 at 12-13.) It is unnecessary to resolve the parties' dispute because the Court finds that under either standard the ALJ's reasons were proper and supported by substantial evidence in the record.

The ALJ first discounted Dr. Roman's opinion because it was inconsistent with the overall medical evidence. AR 45. In so doing, the ALJ noted that Dr. Roman's findings were based on a one-time examination. While typically an examining physician's opinion should not be discounted based on a one-time examination, the ALJ here was specifically referring to the singular nature of Dr. Roman's mental status findings. *See Lidia M. v. Berryhill*, No. 2:18-CV-03179-GJS, 2019 WL 1777289, at *4 (C.D. Cal. Apr. 23, 2019) (noting distinction); *but see Chavez v. Saul*, No. 2:18-CV-1079-EFB, 2019 WL 4747698, at *4 (E.D. Cal. Sept. 30, 2019) ( "[A] medical opinion may not be rejected solely because the physician had only evaluated the claimant on one occasion. To hold otherwise would render every opinion from examining physicians meaningless."); *Brown v. Berryhill*, 2018 WL 4700348, at *17 (N.D. Cal. Sept. 29, 2018) ("Discounting Dr. Thomsen's findings because they are based on a one-time evaluation is legally erroneous because the ALJ's rationale would render all examining opinions superfluous, and is contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors.") (citations and quotations

omitted). This distinction is significant because the record showed little treatment for a mental impairment and the state agency physicians did not make any finding of severity or nonseverity based on the longitudinal treatment records.

Further, as the ALJ indicated, Dr. Roman's opinion was not supported by the medical evidence. An ALJ may reject the opinion of the examining physician where the limitations imposed are inconsistent with objective evidence in the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding that ALJ provided specific and legitimate reason for discounting physician's opinion where opinion was inconsistent with medical records); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). According to the objective medical record, and as identified by the ALJ, Plaintiff "sought little treatment for a mental impairment" and did not participate in counseling. AR 45.

Plaintiff does not disagree with the ALJ's finding that she sought little treatment and did not participate in counseling. Instead, she contends that it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation, citing *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996). (Doc. No. 15 at 10.) As Plaintiff correctly notes, in *Nguyen*, the Ninth Circuit cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1465 (citations omitted). However, Plaintiff's reliance on *Nguyen* is misplaced. Plaintiff has not cited any evidence suggesting that her failure to secure mental health treatment was attributable to her mental illness rather than her own preference or lack of a disabling condition. Indeed, as found significant by the ALJ, Plaintiff did not seek treatment and "did not note any mental health impairment when she initially filed her claim."[5] AR 45, 273. Where, as here, there is no medical evidence that the claimant's resistance to treatment "was attributable to her mental impairment rather than her own personal preference," an ALJ may

---

[5] Plaintiff subsequently alleged disability due to anxiety. However, as the Commissioner argues, the Court finds that Plaintiff's intermittent self-reported anxiety does not detract from the ALJ's inference that her failure to identify anxiety at the application stage suggests that her mental impairment is not disabling or as severe as alleged.

9

properly consider the claimant's failure to seek mental health treatment. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

As another reason for discounting Dr. Roman's opinion, the ALJ found that the opinion was inconsistent with observations of Plaintiff's cooperative demeanor by the consultative examiner and similarly found that Plaintiff's demeanor at the hearing was appropriate. AR 45. An ALJ may properly reject a physician's opinion that is inconsistent with recorded observations of the claimant. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy between physician's notes and other recorded observations and opinions regarding claimant's capabilities "clear and convincing reason" for rejecting physician's opinion). An ALJ also can rely on personal observations. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting the "inclusion of the ALJ's personal observations does not render the decision improper") (citation omitted); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) ("the ALJ's reliance on his observations of [claimant] at the hearing was proper"). Here, the ALJ identified that observations of Plaintiff's cooperative behavior and appropriate demeanor were inconsistent with assessments that she would have mild limitation interacting with coworkers but moderate limitation in interacting with supervisors or the general public. AR 46, 582, 594, 778. In particular, the ALJ considered not only that Plaintiff interacted daily with her family and interacted appropriately at the hearing, but also that Dr. Joyce Roberson, an evaluating physician, opined that Plaintiff's behavior with respect to home and community were good. AR 46, 781. These were relevant considerations that the ALJ properly took into account. *See Pedro v. Colvin*, 671 Fed.App'x. 624 (9th Cir. 2016) (unpublished) (inconsistency between testimony and "not being treated for [any] allegedly disabling anxiety" and claimant "not show[ing] signs of anxiety at the hearing" were "all relevant considerations that the ALJ properly took into account").

As an additional reason, the ALJ discounted Dr. Roman's opinion because it was contradicted by Plaintiff's daily activities. AR 45. An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed.App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a

physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities). In this instance, the ALJ found that Plaintiff retained the ability to perform a wide variety of daily activities, including caring for her disabled son and work around her home. AR 45, 592-93. According to Plaintiff's own testimony, she was able to "be there emotionally" for her children, "keep them on task, doing their homework" and provide input on their homework. AR 63, 68. As for her disabled son, she was able to provide him emotional support and direction, making sure he "stays on task" and "keeps his schedule." She also was able to work with his teachers. AR 64. Additionally, Plaintiff was able to maintain her schedule, waking up early enough to ensure her children got ready for school and staying on task, and being there for them when they returned home from school (AR 74). The ALJ properly determined these daily activities were inconsistent with the moderate limitations assessed by Dr. Roman with respect to Plaintiff's ability to maintain attention, pace and concentration, interact with supervisors and the general public, and adapt or maintain herself. AR 46.

For these reasons, the Court finds that the ALJ did not err in evaluating the opinion of Dr. Roman and assigning it less weight.

**B. The ALJ Was Not Required to Include Mental Limitations in the Hypotheticals and Did Not Err at Step-Five of the Sequential Evaluation**

Plaintiff first argues that the ALJ could not rely on the VE's testimony that Plaintiff would be able to perform work which exists in significant numbers in the national economy because the hypotheticals posed to the VE did not include the limitations assessed by Dr. Roman. Because the Court finds that the ALJ properly discounted Dr. Roman's opinion, the ALJ did not err in omitting the limitations assessed by Dr. Roman in any hypotheticals posed to the VE.

Plaintiff next takes issue with the jobs identified by the VE at step-five of the sequential evaluation. At step five, the ALJ accepted the VE's testimony that a person with Plaintiff's age, education, work experience and RFC could perform representative occupations of *Information Clerk*, Dictionary of Occupation Titles ("DOT") 237.367-022, sedentary SVP 2, 90,000 jobs nationally; *Document Preparer*, DOT # 249.587-018, sedentary, SVP 2, 200,000 jobs nationally; and *Addresser Clerk*, DOT #209.587-010, sedentary, SVP 2, 34,000 jobs nationally. AR 51.

11

| | |
|---|---|
| 1 | With respect to the position of information clerk, Plaintiff contends that the DOT classifies this |
| 2 | work as requiring a specific vocational preparation level ("SVP") of 4, meaning "[o]ver 3 months up |
| 3 | to and including 6 months," and the ALJ incorrectly accepted the VE's testimony that this is unskilled |
| 4 | work. Plaintiff asserts that a question remains as to whether she would be able to perform SVP 4 work |
| 5 | with the limitations assessed by Dr. Roman. (Doc. No. 15 at 14.) Plaintiff is correct that the DOT |
| 6 | identifies the occupation of information clerk as SVP 4. *Information Clerk,* DICOT 237.367-022, |
| 7 | 1991 WL 672188. However, the ALJ the ALJ made no finding that Plaintiff was limited to unskilled |
| 8 | work and properly discounted Dr. Roman's opinion and related mental limitations. There is no |
| 9 | indication that Plaintiff would be unable to perform the work of information clerk. |
| 10 | With respect to the position of document preparer, Plaintiff contends that this occupation has a |
| 11 | Reasoning Level of 3, which is in conflict with a limitation to simple work. The DOT defines jobs at |
| 12 | Reasoning Level 3 as requiring the ability to "[a]pply commonsense understanding to carry out |
| 13 | instructions furnished in written, oral or diagrammatic form. Deal with problems involving several |
| 14 | concrete variables in or from standardized situations." *Document Preparer, Microfilming*, DICOT |
| 15 | 249.587-018, 1991 WL 672349. The Ninth Circuit has determined that Reasoning Level 3 is |
| 16 | inconsistent with a limitation to simple, routine, or repetitive work tasks. *See Zavalin v. Colvin*, 778 |
| 17 | F.3d 842, 843-44 (9th Cir. 2015) (holding "that there is an apparent conflict between Zavalin's |
| 18 | limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 |
| 19 | Reasoning, on the other hand"). Plaintiff claims that if a limitation to simple work had been adopted, |
| 20 | then a conflict would exist between the DOT's description of the job and Plaintiff's RFC. (Doc. No. |
| 21 | 15 at 14.) However, as previously indicated, Plaintiff's RFC did not include any mental limitations, |
| 22 | much less a limitation to simple work, thus the reasoning level requirement is of no moment. The ALJ |
| 23 | properly discounted Dr. Roman's opinion and related mental limitations. |
| 24 | Plaintiff also argues that the job of document preparer is identified in the DOT as "document |
| 25 | preparer, microfilming." Plaintiff claims that the VE's testimony that 200,000 of these jobs exist in |
| 26 | the national economy since the DOT's last update in 1991 is unreasonable. (Doc. No. 15 at 15.) |
| 27 | Plaintiff is correct that the document preparer job identified by the VE is entitled "*Document* |
| 28 | *Preparer, Microfilming*." DICOT 249.587-018, 1991 WL 672349. Plaintiff did not question the job |

numbers at the hearing or otherwise object to the VE's testimony. *Bayliss*, 427 F.3d at 1218 (finding that an ALJ "may take administrative notice of any reliable job information, including information provided by a VE" and noting that a VE's "recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required"); *see Shaibi v. Berryhill*, 883 F.3d 1102, 1108–09 (9th Cir. 2017), as amended (Feb. 28, 2018) (holding that a claimant who does not raise challenges to the "evidentiary basis" of vocational expert testimony about job numbers at the hearing forfeits the right to do so in court). The ALJ therefore was entitled to rely on the job numbers identified by the VE. Insofar as Plaintiff suggests that this occupation is obsolete, courts generally have not made such a determination.

Finally, Plaintiff challenges the job numbers associated with the addresser position. In particular, Plaintiff claims the job of addresser is obsolete and does not exist in significant numbers in the national economy. Plaintiff correctly indicates that some courts in the Ninth Circuit have found that the occupation of "addresser" is obsolete. *See, e g., Sandra M. H. v. Saul*, No. SA CV 18-1933-PLA, 2019 WL 5209245, at *3 (C.D. Cal. Oct. 16, 2019) (noting that certain courts had found occupations of "addressing clerk" and "document preparer" to be obsolete."); *Bazan v. Berryhill,* No. 18-cv-01224-KAW, 2019 WL 4751874, at *8 (N.D. Cal. Sept. 30, 2019) (finding that per the Social Security Administration's own findings, the addresser job is obsolete.)*; Alexey M. K. v. Saul,* No. 18-cv-03149-TSH, 2019 WL 3772189, at *8 (N.D. Cal. Aug. 12, 2019) (finding no substantial evidence that the occupation of addressing clerk exists in significant numbers either regionally or nationally); *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *8 (C.D. Cal. Apr. 2, 2018) ("As other courts have found, common sense (bolstered here by the information presented in the Study and on the SSA website itself), casts doubt on the reliability and credibility of the VE's testimony and on the ALJ's reliance on that testimony to conclude that the occupation of 'addresser' currently exists in significant numbers."). Even if the ALJ erred in finding that the addresser job existed in significant numbers in the national economy, any such error is harmless because the ALJ found that Plaintiff could perform the occupation of information clerk, with 90,000 jobs in the national economy. This is a sufficient number of jobs to render Plaintiff not disabled, even if the other jobs of addresser or document preparer were not available. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th

Cir. 2014) (finding that 25,000 jobs represents a significant number of jobs in several regions of the country).

### C. Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id*. at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 49-50. In so doing, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

The ALJ provided a detailed summary of the medical record in developing Plaintiff's physical RFC and in evaluating her allegations of disabling physical impairments. Based on this evaluation, the ALJ determined that the medical evidence supported a "restrictive limitation of sedentary work" with environmental limitations. AR 50. The ALJ's RFC therefore accepted that Plaintiff was significantly limited, but ultimately discounted subjective symptom testimony that her impairments were totally disabling because that testimony was inconsistent with certain of the medical evidence. AR 49-50. Although lack of medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this instance, the ALJ rejected Plaintiff's allegations of totally disabling symptoms and pain based on examination findings in 2012 showing that her symptoms were moderate, and the severity level of her arthritis was mild to moderate. AR 48-49, 373, 375, 381, 383. In 2013, x-rays of her lumbar spine showed normal mineralization and x-rays of her hips did not show any evidence of erosions or demineralization specific for rheumatoid arthritis. AR 48, 413, 414. In early 2014, the severity level

of her arthritis was noted to be mild to moderate. AR 48, 391, 393. In June 2014, despite reports of numbness and difficulty walking, she was able to transfer and ambulate without the use of any adaptive equipment. AR 48, 432. In October 2015, her symptoms were mild to moderate and remained moderate in December 2015, July 2016, and October 2016. AR 48-49, 613, 618, 659, 664. During a consultative examination in September 2016, Plaintiff was able to walk into the examination room without difficulty, sit comfortably, and could pick up and manipulate small objects. Her gait was normal and straight leg raise testing was negative. Her muscle strength was 5/5 in the upper and lower extremities and her grip was normal bilaterally. AR 49, 594-96. In 2017, although Plaintiff had reduced range of motion in her spine, she had 4/5 strength in her lower extremities and 5/5 strength in her upper extremities. Her symptoms were moderate, and she reported doing fairly well with her medication. AR 49, 783, 795, 798. The ALJ's assessment that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence is supported by substantial evidence and free of legal error.

Second, the ALJ discounted Plaintiff's allegations concerning the limiting effects of her symptoms based on the medical opinion evidence from Dr. Barbara Weiss, the consultative examiner. AR 50. Contrary to Plaintiff's allegations that she was disabled, Dr. Weiss opined that Plaintiff could stand and walk up to four hours in an 8-hour workday, could sit without limitation, did not require an assistive device, could lift and carry 20 pounds occasionally and 10 pounds frequently, could never climb ladders, scaffolds and ropes, and had workplace limitations for working at heights. AR 592-97. The ALJ properly relied upon this opinion in discounting Plaintiff's subjective complaints, assigning it great weight. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, including the opinions of two physicians that a claimant could work, supported the ALJ's credibility determination); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting plaintiff's excess pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

Third, the ALJ discounted Plaintiff's allegations based on a finding that she had some relief with medications. AR 50. Impairments that can be effectively controlled with medication are not disabling for purposes of determining eligibility for disability benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted); *see also Petersen v. Berryhill*, 737 Fed. App'x 329, 332 (9th Cir. June 19, 2018) (citing *Warre* and finding ALJ properly relied on evidence that the claimant's pain and symptoms were controlled with medication and treatment). The ALJ noted that in April 2017, Plaintiff reported that she was "doing fairly well" with her medications and she was obtaining about 50% improvement with medication. AR 49, 798. Plaintiff also testified that her medication for pain and rheumatoid arthritis helped. AR 69-70.

Plaintiff does not dispute that she reported relief from her medications. Instead, Plaintiff contends that she continued to experience pain despite ongoing treatment and the ALJ failed to demonstrate how any alleged relief is inconsistent with Plaintiff's testimony. (Doc. No. 15 at 22.) As the Commissioner points out, however, the ALJ acknowledged that Plaintiff had significant pain and associated limitations but considered that Plaintiff's reported relief from medications was inconsistent with her allegations of total disability. The ALJ was entitled to rely on evidence that Plaintiff received some relief from her medications.

Fourth, the ALJ discounted Plaintiff's subjective complaints based on a determination that Plaintiff retained the ability to perform daily activities, such as caring for her son. AR 45, 50. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina*, 674 F.3d at 1112–1113. Here the ALJ found that Plaintiff retained the ability to perform a wide variety of daily activities, including caring for her disabled son and work around her home. AR 45, 50. As discussed above, Plaintiff reported that she was able to "be there emotionally" for her children, keeping them on task with their homework, and helping with their homework. AR 63, 68. Plaintiff maintained her schedule, waking up early enough to ensure her children got ready for school and stayed on task, and she was there for them when they returned home from school. AR 74. She was able to provide her disabled son with emotional support and direction, making sure he stayed on task and kept his schedule. She also worked with his teachers. AR 64. Further, according to the record,

Plaintiff reported to Dr. Weiss that she was able to make simple meals, wash dishes, shop in short periods of time, wipe counters, watch television three to four hours per day while sitting, use the internet, put clothes in the washing machine and helping with her children. AR 592-93. The ALJ could reasonably conclude that Plaintiff's activities undermined her claims that she was unable to perform any work. Even where Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Tina Marie Rivota.

IT IS SO ORDERED.

Dated: __March 19, 2020__          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE